IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAX TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:04-CV-0746-P |
| | § | |
| BRINKER INTERNATIONAL, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Brinker International, Inc.'s (hereinafter "Brinker") Amended Motion for Summary Judgment, filed November 1, 2005. Plaintiff Max Taylor (hereinafter "Taylor") responded on November 28, 2005, and Brinker replied on December 5, 2005. For the reasons stated below, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment. Defendant's Motion is GRANTED in regards to the reverse race discrimination claim. The Motion is DENIED in regards to the age discrimination claims. In addition, Plaintiff's Motion to Strike and Defendant's Motion for Leave to File Amended Answer are hereby DENIED.

### I. Background

This employment discrimination case arises out of a dispute as to Brinker's decision to terminate Taylor in April of 2003. Taylor asserts age discrimination claims under the Age Discrimination in Employment Act of 1967 (hereinafter "ADEA"), 29 U.S.C. § 621 et seq., and the Texas Commission on Human Rights Act (hereinafter "TCHRA"), Tex. Lab. Code Ann. § 21.001

et seq., as well as race discrimination under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

In 1998, Taylor, a 60 year old white male, began working for Brinker as an independent consultant, conducting training workshops for various departments. In March of 1999, Taylor was offered and accepted full time employment with Brinker as a Director of Training and Development. In this capacity, he directly supervised two other corporate trainers, John Roth (hereinafter "Roth") and Cindy Schuermann (hereinafter "Schuermann"). From the time of his hire until June 2002, Taylor was supervised by Stanley Fletcher (hereinafter "Fletcher").

Around June 2002, as part of a reorganization, Fletcher moved into an individual contributor role, and shortly thereafter Kelli Valade (hereinafter "Valade") took over as Taylor's supervisor. Around this time, Valade also took over supervisory responsibility for Schuermann and Roth.

One of the key initiatives of the corporate training group under Valade was to "develop a structured group of courses that different levels of management would attend." (Def.'s App. at 15: Taylor Dep. 25:13–21.) Around December 2002 or January 2003, Valade expressed concern to Taylor regarding his level of commitment to the initiative and her desire that he play a bigger role in it. (Def.'s App. at 48, 160: Taylor Dep. 118:23–24, 120:1–6, Valade Dep. 106:5–18; Pl.'s App. at 527: Taylor Dep. 118:23–24.)

In early April 2003, Valade gave Taylor his annual performance review. The review was mostly negative, with Taylor receiving a "Below Expectations" rating in five separate categories and only one rating higher than "Meets Expectations." (Def.'s App. at 119–30.) Taylor performed considerably worse on this review than he had on prior reviews. For example, on a review conducted a year before, Taylor achieved a rating of "Meets Expectation" or higher in every

category except one.  (*Id.* at 101–10.)  In three categories, he received a rating of "Outstanding," which "[d]emonstrates sustained performance at the highest possible level."  (*Id.* at 102–03, 106–07.)

On April 15, 2003, Taylor, Roth, and Schuermann participated in a roll-out presentation of the structured training program to Brinker's senior executive officers and directors.  (Pl.'s App. at 5: Taylor Aff. ¶ 24.)  The day after this presentation Valade called all three trainers into her office and harshly rebuked them as a group.  (Pl.'s App. at 11–12: Roth Dep. 19:1–21:11; Def.'s App. at 52: Taylor Dep. 126:13–16.)  However, the next day she terminated only Taylor.  (Pl.'s App. at 5: Taylor Aff. ¶ 25.)

Taylor filed a Charge of Discrimination with the Texas Commission on Human Rights and the EEOC on June 25, 2003.  He filed his complaint in this Court on April 9, 2004, asserting claims based on age discrimination.  On August 10, 2005, the Court allowed Taylor to amend his complaint and assert a claim based on reverse race discrimination.  Brinker now moves for summary judgment on all claims.

## II.  Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such an absence.  *Celotex*,

477 U.S. at 323.  However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  In addition, the court "may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  At this point, the nonmovant must provide specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment.  *Id.* at 248–50; *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th Cir. 1993).  In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322–23; *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988).  Finally, the Court has no duty to search the record for triable issues.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### III.  Analysis

Taylor asserts claims based on the ADEA, TCHRA, and 42 U.S.C. § 1981.  The Court

examines each claim below and ultimately finds that summary judgment is unwarranted as to the claims based on age discrimination, but proper as to the claim based on reverse race discrimination.

### a. Termination in Violation of the ADEA and TCHRA

The ADEA makes it unlawful for an employer to discriminate against an employee because of the individual's age. 29 U.S.C.A. § 623(a)(1) (West 1999). The TCHRA's age discrimination provision, Tex. Lab. Code Ann. § 21.051(1), is "substantively identical" to the ADEA. *McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 461 (5th Cir. 2005).

Under both statutes, discrimination cases based on circumstantial evidence, like Taylor's, are subject to the *McDonnell Douglas* burden-shifting test. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349–50 (5th Cir. 2005); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). To establish a prima facie case under the *McDonnell Douglas* test, a plaintiff must prove that: (1) he is a member of a protected class; (2) he was qualified for the position; and (3) he suffered an adverse employment action. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001). In the case of age-based discrimination, he must also prove that he was replaced by someone outside of the protected class, replaced by someone younger, or otherwise discharged because of his age. *Machinchick*, 398 F.3d at 349–50.

The prima facie case, once established, raises a presumption of discrimination which the defendant must rebut by articulating a legitimate, nondiscriminatory reason for its actions. *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999). This burden on the employer is only one of production, not persuasion, and involves no credibility assessments. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If the employer carries its burden,

the presumption of discrimination created by the prima facie case drops out of the picture, and the plaintiff must prove that the proffered reasons are pretextual. *Id.* To do so, "the plaintiff must . . . offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative)." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citation and internal quotations omitted).

To demonstrate pretext, the plaintiff must present evidence to rebut each of the non-discriminatory reasons that the employer articulates. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). If "the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent evidence that discrimination was the real reason for the adverse employment action." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (citation omitted); *see also Reeves*, 530 U.S. at 143, 148. This is because a plaintiff's prima facie case, along with sufficient evidence that the employer's proffered reason is false, may permit a factfinder to infer that the employer intentionally discriminated. *Reeves*, 530 U.S. at 148.

Such a showing will not prevent summary judgment in every case, however, because in some cases "although [a] plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.*; *see also Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). The fact "that the employer's proffered reason is unpersuasive . . . does not necessarily establish that the plaintiff's proffered reason is correct." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993).

To find in favor of the plaintiff, it "is not enough [for the factfinder] . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 519 (emphasis in original). The ultimate burden of persuasion rests squarely on the plaintiff. *Reeves*, 530 U.S. at 143. As such, courts may consider a number of factors in deciding whether summary judgment is appropriate, including "the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." *Id.* at 148–49. Summary judgment may be particularly appropriate where "the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination . . . occurred" *or* where "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision." *Id.* at 148.

### 1. Prima Facie Case

The parties first argue over whether Taylor has established a prima facie case. While the uncontroverted evidence shows that Taylor was qualified for the position, discharged, and within the protected class at the time of the discharge, the parties dispute whether Taylor was replaced by someone outside the protected class or "otherwise discharged because of his age."

The Court first notes that Taylor has failed to establish that he was replaced by someone outside the protected class. Taylor argues that he was replaced by Rosalie Robinson or Janice Voss. (Pl.'s Resp. at 28–29.) However, the summary judgment evidence shows that Robinson was hired for a different position within Brinker and that Voss was not hired until nearly a year after Taylor's termination. (Def.'s App. at 230: Valade Decl. ¶ 7; Pl.'s App. at 373: Schuermann Dep. 60:15–18.) Taylor has thus failed to show that he was replaced by someone outside the protected class.

Nevertheless, Taylor successfully establishes a prima facie case of age discrimination by producing evidence that he was "otherwise discharged because of his age." As will be discussed in greater detail below, Taylor provides evidence that he was treated much more severely for his performance at the roll-out than similarly situated, younger employees.  Such evidence may "logically suggest a discriminatory motive for purposes of establishing a prima facie case of age discrimination."  *Machinchick*, 398 F.3d at 353 n.26.  He has also produced evidence of a substantial, and arguably unexplainable, drop in his performance ratings just prior to his termination. In addition, he provides evidence of indirect references to his age, which can give rise to an inference of discrimination. *Id.* at 353.  For example, in the April 2003 performance review, Valade complains about "the need for him to be more flexible" and to "be open to doing things differently." (Def.'s App. at 129.)  Taken as a whole, this evidence supports an inference that age was a factor in his termination.  As such, the Court finds that Taylor has established a prima facie case of age discrimination by producing evidence that he was "otherwise discharged because of his age."

### 2.  Legitimate, Nondiscriminatory Reason

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the discharge.  In this case, Brinker claims that it discharged Taylor due to performance deficiencies.  In particular, the company alleges that Taylor was terminated because he failed to meet certain objectives regarding the development and roll-out of a structured training program and because senior executives complained about his training sessions.  (Def.'s Am. Mot. at 2.)

Valade testified that at a meeting in December 2002 or January 2003 she stressed the need

for Taylor's commitment to the structured training initiative and asked him to play a bigger role in the project. (Def.'s App. at 160: Valade Dep. 106:5–18.) Her dissatisfaction with his performance on this initiative is further reflected in the April 2003 review.[1] (Def.'s App. at 119–30.) In regards to complaints from senior management, the first occurred in early April when Jan Barr, Vice President of Human Resources for Chili's, complained to Valade about Taylor's work on two training sessions.[2] (Def.'s App. at 219: Barr Dep. 72:10–18.) The second complaint followed the roll-out presentation when a number of senior executives and directors expressed concern about Taylor's performance.[3] (Def.'s App. at 166–69: Valade Dep. 117:24–120:11.)

Based on this evidence, the Court concludes that Brinker has carried its burden of articulating a legitimate, nondiscriminatory reason for its decision to terminate Taylor's

---

[1] For example, the review stated that:
The goal for training this past twelve months has been to step out and formalize training and add more structure. Max has struggled to do that in a lot of ways.

. . . .

. . . Max had been asked for several months to derive the appropriate measures and metrics for training. He had been asked to do this when he directed the group, and now as we embark on this new training, it has been brought up many times. Max does not seem to have ideas around how to do this. It seems in part that he disagrees with taking that kind of structures approach, and doesn't understand how to go about doing so.

(Def.'s App. at 120–21.)

[2] Barr was disappointed that Taylor "hadn't brought the follow-up paperwork . . . didn't do anything facilitation-wise to do a debrief . . . wasn't engaged" and had led a few small group activities that "weren't very productive." (Def.'s App. at 220–21: Barr Dep. 76:24–77:12.) Barr allegedly told Valade at the time: "I've had it, I can't have Max back." (*Id.* at 221: 77:12–17.)

[3] For example, Todd Diener, Brinker's Chief Operating Officer, allegedly stopped Valade in the hall and said:
Great job on the training session today. The breakouts were the weakest part about the session, although it was pretty good overall. I think Max is having difficulty. He had a difficult time with his breakout session.
(Def.'s App. at 168: Valade Dep. 119:6–10.)

employment.  Because Defendant has met its burden of production, "any presumption of discrimination vanishes." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 345 (5th Cir. 2005).  As such, the burden is on Taylor to show "that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative)." *Rachid*, 376 F.3d at 309.

### 3. Pretext

In the instant case, Plaintiff attempts to survive summary judgment by showing that there is a genuine issue of fact as to pretext.  Having examined the summary judgment record, the Court concludes that Taylor has shouldered this burden.

The Court begins by noting that Taylor performed considerably worse on his April 2003 performance review than he did on prior reviews.  For example, on his March 2002 review, Taylor received a rating of "Meets Expectations" or higher in every category except one, including three "Outstanding" ratings.  (Def.'s App. at 101–10.)  On his April 2003 review, however, Taylor received a "Below Expectations" rating in five separate categories and only one rating higher than "Meets Expectations."  (*Id.* at 119–30.)

It is well established that a substantial, unexplained drop in performance ratings may support a finding of pretext.  *See Perez*, 307 F.3d at 325; *Ross v. Campbell Soup Co.*, 237 F.3d 701, 708 (6th Cir. 2001).  Here, the April 2003 performance review is partially explained by the summary judgment evidence showing that Valade was concerned with Taylor's performance on the structured training initiative.  However, the April 2003 review expresses concern with more than just Taylor's

performance on this one initiative.  The review indicates that there was a substantial drop in his overall performance over the course of the year.  Unfortunately for Brinker, there is very little summary judgment evidence corroborating this assessment.  In the absence of such evidence, a reasonable factfinder could determine that the substantial drop in Taylor's overall performance review ratings from one year to the next constitutes evidence of pretext

The Court also points out that Roth and Schuermann, the younger trainers, were treated less severely than Taylor for their performance at the roll-out.  As noted above, the three trainers were collectively reprimanded for their preparation and performance at the corporate training roll-out, but only Taylor was terminated.  While there is evidence that Roth and Schuermann produced more "deliverables" before the roll-out than Taylor, a reasonable juror could conclude that this was a relatively minor difference that did not justify the substantially different treatment. As such, the Court determines that a reasonable factfinder could view the preferential treatment of Roth and Schuermann as evidence of pretext.  *See Okoye*, 245 F.3d at 514.  In addition, the Court notes that Roth and Taylor both testified that the performance roll-out went fairly well, which raises further questions as to whether Taylor's performance at the roll-out was the true reason for his termination.

Taylor also argues that Fletcher made a comment showing age based animus and that this constitutes evidence of pretext.  Prior to his termination, Taylor approached Fletcher regarding possibly transferring within Brinker to Fletcher's department.  In response, Fletcher replied, "No, you are too old."  (Pl.'s App. at 5: Taylor Aff. ¶ 23.)  He then stated, "I am too old, we are all too old." (*Id.*)  While Fletcher denies making this remark, Roth and Schuermann both testify that he did. (Pl.'s App. at 13, 362: Roth Dep. 26:4–5, Schuermann Dep. 16:3–7.)  At his deposition, Roth stated

that Taylor had expressed an interest in doing more work for the concept restaurants and Fletcher responded: "Max, you know you're too old for that."  (Pl.'s App. at 13: Roth Dep. 26:4–5.)  Roth said that he remembered this statement because he was "shocked when he said it" and "thought it was a fairly inappropriate thing to say . . . ."  (*Id.* at 17: 57:14–16.)

Even if Fletcher did make this remark, Taylor has failed to show that it is evidence of pretext. In order for workplace remarks to constitute evidence of pretext, the plaintiff must show that "they indicate age-based animus and the speaker is principally responsible for the plaintiff's firing." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002); *see also Reeves*, 530 U.S. at 151; *Russell*, 235 F.3d at 226.  Here, Taylor has failed to show that Fletcher was responsible, primarily or otherwise, for Taylor's termination.

Taylor maintains that "Fletcher was a manager who was in a position to influence the adverse employment action . . . in that he had input into the final, negative review which led to the discharge." (Pl.'s Resp. at 47.)  There is some evidence suggesting that Fletcher's feedback was incorporated into the April 2003 performance review.  Valade's Declaration states that, in connection with the performance review, several people in the company were sent 360 degree evaluation forms. (Def.'s App. at 229: Valade Decl. ¶ 6.)  These forms are completed by those who work with, but do not supervise, the employee and incorporated into the final review.  (*Id.*)  At her deposition, Valade testified that Fletcher received a 360 degree form and that she believed he filled it out. (Def.'s App. at 139: Valade Dep. 29:15–20.)  However, there is no suggestion in the record that his feedback played a determinative role or that he otherwise exercised substantial influence over the process.

**Memorandum Opinion and Order**
**No. 3:04-CV-0746-P**
**Page 12 of 15**

Furthermore, there is almost no evidence that Fletcher played a role in the termination decision. In fact, Valade and Fletcher both testified that he had no input in the matter. (Def.'s App. at 162, 187: Valade Dep. 109:13–15, Fletcher Dep. 11:6–8.) The only evidence Taylor offers to rebut this testimony are inferences to be drawn from the fact that there is significant overlap between Fletcher and Valade's job responsibilities. Even drawing such inferences in favor of the plaintiff, the Court still concludes that there is insufficient evidence to establish a fact issue over whether Fletcher was responsible, primarily or otherwise, for Taylor's termination. As such, Taylor has failed to establish that Fletcher's comments regarding his age constitute evidence of pretext.[4]

Even excluding consideration of Fletcher's remark, Taylor still presents enough evidence to survive summary judgment. In sum, he has offered two convincing evidentiary arguments that support a finding of pretext: first, he produces evidence that there was a substantial, unexplained drop in Plaintiff's performance ratings from one year to the next, and second he provides evidence that younger employees were treated substantially less severely in similar circumstances. Viewing this evidence in the light most favorable to Taylor, the Court concludes that a reasonable factfinder could find the existence of pretext. As such, Defendant is not entitled to summary judgment on its age discrimination claims.

### B.  Termination in Violation of 42 U.S.C. § 1981.

Plaintiff also brings a reverse race discrimination claim pursuant to 42 U.S.C. § 1981. This claim fails, however, because Taylor cannot establish a prima facie case. As discussed above, the

---

[4] There is also evidence that in a review of Fletcher, Doug Brooks, the CEO of Brinker, wrote: "I wouldn't want to lose old man Fletcher." (Def.'s App. at 582.) However, this remark, assuming for purposes of this motion that it shows age based animus, was made in a context totally unrelated to the employment decision at issue here. Furthermore, there is no evidence that Brooks played a role in Taylor's termination. Therefore, this remark is best classified as a stray remark.

summary judgment evidence shows that Robinson was not hired to replace Taylor, but to fill a new position.  As a result, Taylor cannot show that he was replaced by someone outside the protected class.  Brinker is therefore entitled to summary judgment on Taylor's reverse race discrimination claim.

### IV.  Motion to Leave to File Amended Answer

Defendant also moves for leave to amend its answer so as to plead the mixed motive affirmative defense.  Plaintiff vigorously objects, arguing that such amendment would cause substantial prejudice at this late stage in the proceedings.  In particular, Taylor complains that allowing Brinker to amend its pleadings after the close of discovery and the filing of its Amended Motion for Summary Judgment would deprive him of the opportunity to conduct discovery on the factual issues surrounding this defense.

While Brinker claims that no new discovery would be required if it asserts this defense, the Court disagrees.  Plaintiff has requested that discovery be reopened if the defense is asserted, and the Court thinks that this would be necessary to avoid substantial prejudice.  Determining whether an impermissible motive played a role in a termination decision involves a different factual inquiry than deciding whether the same decision would have been made even in the absence of an impermissible motivating factor.

Due to a lengthy discovery process that was extended at the behest of counsel and required Court intervention at one point, this case has been pending for nearly two years.  As such, the Court does not think that it is appropriate to grant a continuance and reopen discovery at this late date.  Any prejudice to the defendant in not being able to assert the mixed motive affirmative defense

could have been avoided by timely raising it.  In light of the considerations above, the Court will not allow Defendant to amend its pleadings to include this affirmative defense.

## Conclusion

For the reasons stated above, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment.  Defendant's Motion is GRANTED in regards to the reverse race discrimination claim.  The Motion is DENIED in regards to the age discrimination claims.  In addition, Plaintiff's Motion to Strike and Defendant's Motion for Leave to File Amended Answer are hereby DENIED.

**It is so ordered.**

Signed this 24th day of February 2006.


_Jorge A. Solis_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE